UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL R. JUTRAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-00051-LEW |
| | ) | |
| MARK LOPEZ, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

In this action, the Plaintiff, Michael Jutras, seeks money damages and injunctive relief against the remaining Defendants, the Town of Carrabassett Valley, Chief of Police Mark Lopez, and Town Manager David Cota.  Plaintiff alleges Defendant Lopez, without justification, singled him out for harassment and mistreatment, which ultimately caused Plaintiff to sell his condominium in the Town of Carrabassett Valley (among other asserted harms).  Compl. ¶ 70.  The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 186) and Plaintiff's Motion for Sua Sponte Summary Judgment (ECF No. 200).

### I.   SUMMARY JUDGMENT PROCEDURAL BACKGROUND

On December 21, 2018, Defendants Carrabassett Valley, Lopez, and Cota ("Town Defendants") filed notice of their intent to file a motion for summary judgment.  (ECF No. 138.)  The Court issued a procedural order in which it scheduled a conference for January 30, 2019.  (ECF No. 140.)  In its order, the Court cited Local Rule 56 and advised each

party intending to file a motion for summary judgment that they would be required to file a pre-motion memorandum indicating the estimated number of factual statements required to resolve disputed issues and the nature of the record that would be introduced to support those statements.  In their pre-conference memorandum, the Town Defendants explained they would need roughly 100 paragraphs and they itemized the evidence they would rely on to support their motion.  (ECF No. 148.)

Plaintiff also filed a pre-conference memorandum.  Among other contentions, Plaintiff advised the Court that, in his view, summary judgment "is implausible at this time as there is important testimony from myriad witnesses that cannot likely or readily be produced except for in person at [jury trial]."  Pl.'s Rule 56(h) Pre-Filing Conference Memorandum ¶ 11 (ECF No. 149).  Plaintiff also alluded to "eleven voice recordings, police records, court records and emails."[1]  *Id.*

In a docket order entered February 4, 2019 (ECF No. 162), the Court established the groundwork to resolve the parties' lingering discovery disputes.  In a February 6, 2019 Report of Pre-Filing Conference Under Local Rule 56(h) (ECF No. 163), the Court set forth the issues in contention and established the summary judgment briefing schedule. Through a docket order dated March 14, 2019 (ECF No. 183), entered based on additional filings by and conferences with the parties, the Court resolved the remaining discovery concerns.

---

[1] Plaintiff in fact filed twelve voice recordings, though one of the files is corrupted.

The Town Defendants timely filed their motion for summary judgment on April 1, 2019.  In support of their motion, the Town Defendants filed a Local Rule 56 statement of material facts, together with eleven evidentiary exhibits (ECF Nos. 186-192).  On April 22, 2019, Plaintiff filed his response to the summary judgment motion (ECF No. 193).  On April 29, 2019, Plaintiff filed a response to the statement of material fact (ECF No. 194) and two exhibits in support of his response (ECF Nos. 194-1, 194-2).  In his summary judgment filings, Plaintiff requested that the Court listen to audio recordings stored on a thumb drive and review an affidavit from former Carrabassett Valley Police Chief Deputy Randy Walker.

## II.  Plaintiff's Motion for Sua Sponte Summary Judgment

On May 24, 2019, after the close of the summary judgment briefing schedule, Plaintiff filed a document captioned Memorandum of Law in Support of Sua Sponte Summary Judgment (ECF No. 200).  In this filing, Plaintiff expressed the view that the filing of an opposition statement (i.e., additional statement) of facts is not required to stave off a summary judgment motion.  He also stated he "would be willing" to provide such a statement, if it would "please" the Court.  *Id.* at 1, ¶ 2.  According to Plaintiff, he would make such a filing "if and only if the Court desires."  *Id.* at 1-2, ¶ 3.  Otherwise, Plaintiff "encourage[d]" the Court to read the affidavit of Randy Walker and listen to 12 voice recordings on the thumb drive.  *Id.* at 2, ¶ 4.  The Plaintiff did not, thereafter, file any additional statement.  Moreover, had he done so, the filing would have been untimely.

Plaintiff's suggestion that he is willing to provide a further statement was docketed as a motion and, as such, it is DENIED.  It is not the Court's function to request or desire

evidentiary presentations by the parties.  The Court is here to facilitate the resolution of disputes in the capacity of a neutral arbiter.  The Court requires the parties to observe and follow the applicable rules and does not coach or choose sides during litigation.  As the matter now stands, Plaintiff indicated in his pre-filing conference memorandum (ECF No. 149) that he would not file his own motion for summary judgment.  I will hold Plaintiff to his election.  While the Court may have permitted Plaintiff to change his mind, the Court designated April 1, 2019, as the deadline for filing summary judgment motions.  Plaintiff's May 24, 2019 suggestion that he might be willing to file a statement of facts, therefore, was too little, too late.  I decline to revise the schedule for Plaintiff's convenience so that he can introduce evidence through statements submitted outside the established schedule. Although he declined to file his own motion for summary judgment, Plaintiff had a full and fair opportunity to provide whatever factual statements and supporting record he wished by filing an additional statement of material facts in opposition to the Town Defendants' motion.  However, he needed to do so by April 29, 2019.  He did not meet the deadline.  Having said that, the parties will observe that I have, in fact, reviewed the audio recordings and the Walker affidavit, and I have proceeded as though those items were properly submitted in the context of the summary judgment briefing cycle.

### III.  Defendants' Motion for Summary Judgment

The summary judgment facts are drawn from the parties' statements of material facts submitted in accordance with Local Rule 56.  The Court will adopt a statement of fact if it is admitted by the opposing party and is material to the dispute.  If a statement is denied or qualified by the opposing party, or if an evidentiary objection is raised concerning the

record evidence cited in support of a statement, the Court will review those portions of the summary judgment record cited by the parties, and will accept, for summary judgment purposes, the factual assertion that is most favorable to the party opposing the entry of summary judgment, provided that the record material cited in support of the assertion is of evidentiary quality and is capable of supporting the party's assertion, either directly or through reasonable inference.  D. Me. Loc. R. 56; *Boudreau v. Lussier*, 901 F.3d 65, 69 (1st Cir. 2018).

While Plaintiff is correct that the Local Rule does not require the filing of a separate statement of additional material facts, where the party moving for summary judgment has presented a record demonstrating that the claims in question are not substantiated on the record, the burden shifts to the party opposing summary judgment "to produce 'specific facts, in suitable evidentiary form, to ... establish the presence of a trialworthy issue.'" *Triangle Trading Co. v. Robroy Indus*., *Inc*., 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Morris v. Government Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).  As explained recently by Judge Woodcock of this District:

> In other words, the nonmoving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp*., 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).  The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons*, *Ltd. v. Paychex*, *Inc*., 632 F.3d 31, 35 (1st Cir. 2011).  However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas de Puerto Rico*, *Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist*., 584 F.3d 314, 325 (1st Cir. 2009).

*Fed. Energy Regulatory Comm'n v. Silkman*, 359 F. Supp. 3d 66, 115 (D. Me. 2019).

The question, therefore, is not whether it would "please" the Court for Plaintiff to file a record in support of his claim. The question is whether the Town Defendants have made a sufficient evidentiary proffer to put Plaintiff to the task of demonstrating that record material of evidentiary quality demonstrates wrongdoing of a constitutional magnitude, and, if so, whether Plaintiff has met the challenge. With that preface, I will recite the facts that are apparent from the summary judgment record, viewed most favorably to Plaintiff's cause.

Mr. Jutras' claims in this case all arise out of a series of incidents beginning in December of 2012 and ending in April of 2016. Defs.' Stmt. Material Facts (DSMF) ¶ 1.[2] At this time (i.e., in this action), Mr. Jutras is not asserting any claims under state law. *Id.* ¶ 2. Mr. Jutras asserts a § 1983 claim for alleged violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 3 – 8.

Mr. Jutras bases his claims against the Town Defendants exclusively on actions taken by Mr. Lopez and Mr. Cota. *Id.* ¶¶ 9 – 11. Mr. Lopez is the Chief of Police for the Town of Carrabassett Valley and he has been so employed since December of 2012. *Id.* ¶ 126. Mr. Cota is the Town Manager for the Town of Carrabassett Valley and he has been so employed since May of 2000. *Id.* ¶ 128.

---

[2] Although I have cited only the DSMF, my report of the statement takes into consideration Plaintiff's responsive statement (ECF No. 194). When I cite the underlying record, as well, it is indicative of some manner of disagreement between the parties as to how to characterize the fact in question.

### *First encounters*

Mr. Jutras testified that Mr. Lopez arrived unannounced at his condominium on two occasions between December 2012 and March 2013, and that he regarded certain statements made by Lopez to be "threats." *Id.* ¶¶ 12, 13, 17.  On the first occasion, Mr. Lopez knocked on Mr. Jutras's door (evidently when Mr. Jutras was relatively new to the condominium), and their conversation was, more or less, "congenial," which evidently means the alleged threat component was "a little more nebulous."  Jutras Dep. at 56 (ECF No. 188).  Sometime during that conversation, Lopez asked, "Are you sure you really want to live here?"  Jutras Dep. at 57; DSMF ¶ 16.  On the second occasion, Lopez again arrived unannounced and Mr. Jutras admitted him to the condominium.  DSMF ¶¶ 13 – 14.  At his deposition, Mr. Jutras did not recollect the entire conversation, but offered this recollection:

> And I remember very vividly in the sense what he said to me was kind of shocking. He said: Mike – he said something to the effect of: Mike, this is a courtesy visit.  I just want to let you know that I really think you'd be happier living in another town.  And he said, what I took to mean:  I'm going to prosecute you until you leave.  And he said, and I remember these words specifically, he said: They pay me to do this.

Jutras Dep. at 48 – 49; DMSF ¶¶ 18 – 19.

### *Parking Tickets (unspecified dates)*

Mr. Jutras received four to five parking tickets and a traffic ticket while living in Carrabassett Valley.  DSMF ¶ 39.  Mr. Jutras described these tickets as having "little significance."  *Id.* ¶ 40; Jutras Dep. at 70.  Mr. Jutras believes he was only required to pay a ten dollar fine for one of the parking tickets.  The remaining parking tickets were "taken off" by the Carrabassett Valley Police Department.  DSMF ¶ 41; Jutras Dep. at 72 – 73.

Mr. Jutras has no evidence that Mr. Lopez or Mr. Cota issued any of the alleged parking tickets.  DSMF ¶ 43.  Mr. Lopez was personally involved in negating at least two tickets.  *Id.* ¶ 42; Jutras Dep. at 73.  There are two audio recordings related to tickets; they do not reveal anything even remotely concerning.  Thumb drive audio recordings dated 2/17/14 and 2/22/14.

### Alleged Tailgating Incidents (unspecified dates)

Mr. Jutras testified at his deposition that he was subjected to "tailgating pressure" by Carrabassett Valley police officers on between three to six occasions.  DSMF ¶ 61.  Although he was able to recognize the tailgating vehicle as a Carrabassett Valley police car, Mr. Jutras could not identify the officer at the wheel.  *Id.* ¶¶ 62 – 63.  The officer(s) would deploy a roof spotlight that was very distracting at night.  Jutras Dep. at 94.

Neither Mr. Lopez nor Mr. Cota ever tailgated Mr. Jutras' vehicles. DSMF ¶ 64.  Mr. Lopez denies having any knowledge of such tailgating prior to Mr. Jutras's institution of this lawsuit.  *Id.* ¶ 65. Mr. Jutras does not recall ever making a complaint about the tailgating incidents.  *Id.* ¶ 66.

### Condo roof

On April 27, 2013, Mr. Jutras and some friends were gathered on the roof of the Gondola Village condominium building.  *Id.* ¶ 25.  Carrabassett Valley Police Officer Tom Cummings went on the roof, told everyone to get off, and warned everyone present to stay off the roof.  *Id.* ¶¶ 26, 28, 29.  Everyone complied, initially, and Mr. Jutras informed Officer Cummings that no one would go back on the roof.  *Id.* ¶ 27.

On April 29, 2013, Mr. Lopez and his chief deputy, Randy Walker, went to the Gondola Village condominium based on a report that Mr. Jutras was back on the roof area with others.[3]  *Id.* ¶ 35.  Given his knowledge that Mr. Jutras had received a warning not to return to the roof, Mr. Lopez issued a summons to Mr. Jutras for criminal trespass in violation of 17-A M.R.S. § 402(1)(A).  Mr. Jutras was not taken into custody.  *Id.* ¶¶ 37 – 38.  Plaintiff did not concede the authority of the police or the condominium association to keep him off the roof because, in his view, the roof is a "common area" for occupants to enjoy.  Pl.'s Responsive Stmt. ¶ 37 (ECF No. 194); Jutras Dep. at 69.

### Mattress spring

Mr. Jutras's former condo unit has a third-story deck.  DSMF ¶ 68.  On the ground floor of the condo directly beneath Mr. Jutras's unit was Sugarloaf Child Care.  *Id.* ¶ 69.  On December 28, 2013, Mr. Lopez issued a summons to Mr. Jutras for criminal recklessness.  *Id.* ¶ 82.  On that date, Mr. Jutras dropped a metal mattress spring from the deck of his condominium unit and the mattress spring landed, without incident or injury, in a snow bank situated just outside a plate glass window to the childcare space.  *Id.* ¶ 73.  The police report for the incident indicates that Mr. Lopez received a call from Marcia White, evidently someone associated with the child care operation.  *Id.* ¶¶ 69, 71; Jutras Dep. at 100.  Mr. Jutras believes it is "probably correct" that the spring landed within four feet of the window.  DSMF ¶¶ 73 – 74; Jutras Dep. at 101.  When Mr. Jutras was in the act

---

[3] Plaintiff objects to a series of statements to the effect that Mr. Lopez received a call from a representative of the condominium association, which explains why he returned to the condominium on April 29.  I have not stricken the statements, but I have limited the narrative to the material facts.

of dropping the spring, a Mr. McKenna advised him, "I wouldn't do that."  DSMF ¶ 76;

Jutras Dep. at 104.  Mr. Jutras assessed the situation as involving minimal risk and dropped

the spring, which landed without harm to persons or property.  Pl.'s Responsive Stmt. ¶ 75.

Mr. Lopez issued a summons for violation of 17-A M.R.S. § 211 because he had previously

warned Mr. Jutras not to throw things off his deck.  DSMF ¶ 80.  Mr. Jutras disagrees with

this characterization and states that on the prior occasion it was a sauna or part of a sauna

the wind blew off the deck.[4]  Pl.'s Responsive Stmt. ¶ 80.

### *No parking*

In early 2014, Mr. Jutras parked his car in a no-parking zone and left it idling while

he brought breakfast to his girlfriend at the Sugarloaf ticket counter.  Jutras Dep. at 52 –

53; DSMF ¶¶ 21 – 22.  Mr. Lopez entered shortly after Mr. Jutras and the following

exchange transpired:

> Jutras, if you don't move that fucking car right now, I'm going to have it
> towed. I said:  Chief, it's running, I'm going to be in here ten seconds.  Will
> you relax a little bit?  He went on this other little bit of a tirade yelling at me
> and telling me that I didn't belong to be at the mountain and all this stuff and
> I left.

Jutras Dep. at 53; DSMF ¶ 23.

### *Parking Pass Incident*

As a condominium owner, Mr. Jutras received two parking passes for Gondola

Village.  In approximately February 2014, Mr. Lopez took from Mr. Jutras's girlfriend one

---

[4] The Town Defendants do not disagree.  In support of their statement they cited an email communication involving parts of a sauna blown from the upper deck.  DSMF ¶ 81, citing Jutras Dep. Ex. 11 (ECF No. 189-3).

of the parking passes issued to Mr. Jutras.  DSMF ¶ 55; Jutras Dep. at 85.  Mr. Jutras was not present and everything he knows about it he learned from others.  DSMF ¶ 56.  In short, Mr. Lopez took from Jutras's girlfriend a parking pass for the condominium unit next door to Mr. Jutras's unit, which had been sent to Jutras in error.  Jutras Dep. at 89.  Mr. Jutras received the correct parking pass within the next day.  DSMF ¶ 59.  Mr. Jutras received a call from his girlfriend, who was upset and crying after her encounter with Mr. Lopez.  Mr. Jutras regards this incident to be a good example of how Mr. Lopez went out of his way to take an official police response to relatively trifling matters.[5]

### *Recorded Conversation with Mr. Cota*

Mr. Jutras recorded a conversation with Mr. Cota, on February 4, 2014.  In the recorded conversation, Mr. Jutras can be heard to complain about the fact he had to appear in court for dropping the mattress spring off his deck, and to put Mr. Cota "on notice" about what he considered to be inappropriate conduct on the part of Mr. Lopez.  Mr. Cota indicated that he did not have the authority to intervene in police matters.

Nothing in the recording could reasonably be interpreted as an admission by Mr. Cota that he was aware of anything that could have been regarded as a deprivation of Mr. Jutras's constitutional rights.  DSMF ¶¶ 84 – 88; Thumb Drive recording dated 2/4/14.  Frankly, there is nothing whatsoever in the recording that would even suggest unreasonableness on the part of Mr. Cota, and Mr. Jutras himself acknowledged that he was living in a fish bowl in the condominium and has a "big personality," that a number of

---

[5] Evidently, Mr. Lopez served as head of security for Sugarloaf, in addition to his duties for the Town and regularly received complaints from condominium occupants because the property was a Sugarloaf asset.

other residents had made complaints about him that reached Mr. Lopez, that there was "definitive tension" at the condominium, that he made a mistake with the roof issue, and that he may also have shoveled snow off his third story deck that hit someone, but that he felt it was excessive to write him up on the criminal recklessness charge.[6]

### *Death threat*

In March of 2014, a man named Tom approached Mr. Jutras at "the Rack," a local watering hole, and told Mr. Jutras he would kill him. *Id.* ¶ 90. Mr. Lopez was not present. *Id.* ¶ 91. Nor was Mr. Cota. *Id.* According to Mr. Jutras's deposition testimony, cited by Defendants, Tom told Mr. Jutras that he had it "on good order that the chief wants you out of the Valley." Jutras Dep. at 126. Mr. Jutras went to speak to Mr. Lopez the next day and he informed Mr. Lopez that he did not want to prosecute Tom. DSMF ¶ 95. There is an audio recording of the conversation, in which recording Mr. Jutras can be heard stating he did not want to do anything about it because the guy was on meds and was maybe having a bad night. Mr. Jutras's statements also indicate he was aware that the man might dislike him based on a conflict between the man's wife and Mr. Jutras. In the recording, Mr. Jutras says Tom stated, "Everybody in the Valley hates you, just ask the Chief." Thumb Drive audio recording dated 3/15/14. There is nothing noteworthy about Mr. Lopez's statements that would support Mr. Jutras's claim in this action.

---

[6] Mr. Jutras has asked that I consider the content of the audio recordings and it is his intention, based on his filings, to introduce the evidence at trial.

### *Car Towing*

In March 2014, a car owned by Mr. Jutras was towed from one spot in the parking lot of Gondola Village and almost immediately returned.  DSMF ¶¶ 51 – 52.  Mr. Jutras was not charged for the towing and did not lose the use of his vehicle for any length of time.  *Id.* ¶ 53.  It is not apparent what connection this has to the Town Defendants.

### *OUI*

On March 22, 2014, Officer Cummings conducted a traffic stop in which he seized Mr. Jutras to investigate a potential OUI.  *Id.* ¶¶ 97 – 98.  Neither Mr. Lopez nor Mr. Cota were present for the traffic stop or any other portion of the events leading up to the issuance of the OUI summons.  *Id.* ¶ 99.  Mr. Jutras eventually entered a plea of nolo contendre to a charge of driving to endanger.  *Id.* ¶ 100.  Mr. Jutras offers as a "qualification" the fact that his initial breath into the breathalizer resulted in a BAC of 0.079, and he believes he probably could have won the case had he fought the charge.  Pl.'s Responsive Stmt. ¶ 100; Jutras Dep. at 132 – 133.

### *Traffic Ticket*

On May 25, 2014, Mr. Lopez was on patrol in Carrabassett Valley and stopped Mr. Jutras, who was driving his pickup.  DSMF ¶ 44.  The inspection sticker on Mr. Jutras's pickup had expired 52 days before the stop.  *Id.* ¶ 46. Mr. Lopez issued Mr. Jutras a summons for operating a vehicle without a valid inspection certificate in violation of 29-A M.R.S. § 1768(7).  *Id.* ¶ 49.  Mr. Lopez did not take Mr. Jutras into custody.  *Id.* ¶ 50.  The interaction was recorded by Jutras.  Thumb drive audio recording dated 5/25/14.  There is nothing noteworthy about the exchange that would support Mr. Jutras's claim in this action.

*Noise*

On May 27, 2014, Mr. Jutras asked some contractors working next door to his condo unit if he could borrow a screwdriver.  He did not like the response he received.  He returned to his unit and "was listening to music and it was probably a little bit loud."  Jutras Dep. at 137.  He then left the condominium but left the music playing.  *Id.*   According to his deposition testimony, he "left it on Katy Perry repeat."  "It might have been [the single] Birthday."  *Id.* at 138; DSMF ¶¶ 103 – 104.   When Chief Deputy Walker went to investigate, Mr. Jutras did not answer his door because he was not present.  DSMF ¶ 106.  It was not the first occasion on which officers had responded to a noise complaint concerning Mr. Jutras, and they had asked him previously to turn down loud music.  DSMF ¶ 105; Jutras Dep. at 140 – 141.

On May 28, 2014, Mr. Lopez and Chief Deputy Walker served a summons on Mr. Jutras (evidently disorderly conduct, though Mr. Jutras says it was a cease harassment order).  Jutras Dep. at 135 – 136, 142.  Mr. Jutras recorded the interaction.  There is nothing noteworthy about the exchange that would support Mr. Jutras's claim in this action.

**Car Vandalism and Summons for Transporting Loaded Gun**

On September 16, 2014, the Carrabassett Valley Police Department investigated an incident involving vandalism of a Volkswagen GTI registered to Mr. Jutras.  DSMF ¶ 111.  The vandalism consisted of broken windows.  Jutras Dep. at 154.  Mr. Lopez and Mr. Cota deny any involvement in the vandalism.  DSMF ¶ 118.  One or more officers (according to the Town Defendants, Officer Reed) removed four guns from the vehicle.  *Id.* ¶¶ 112, 114.  According to Mr. Lopez, one rifle retrieved from under the broken glass was loaded with

ammunition.  *Id.* ¶ 115.  When Mr. Jutras came to collect his firearms, Mr. Lopez issued

Mr. Jutras a summons for keeping a loaded firearm in his vehicle in violation of 12 M.R.S.

§ 11212 (repealed). [7]  *Id.* ¶ 118.

Mr. Jutras recorded two conversations, one with Mr. Walker and one with Mr.

Lopez.  Thumb drive audio recordings dated 10/8/14 and 10/10/14. [8]  Although Mr. Jutras

appears to argue that there is something suspect about the failure of a nearby hotel's "hot

tub camera" to record the vandalism – a concern he raised in the recorded conversation

with Walker – there is nothing in the record that would support a finding of any spoliation

of evidence.  It is not even apparent from any evidence before the Court that the camera in

question was trained on the location of Mr. Jutras's car or would have been motion-

activated under the circumstances.

### No Trespass Letters

Mr. Jutras received a no trespass letter from Foster Stewart, Jr., Esq. dated April 1,

2016.  *Id.* ¶ 120.   Mr. Jutras received another letter from Thomas Quarles, Jr., Esq. of

Devine Millimet dated April 15, 2016.  *Id.* ¶ 122.  The content of the letters is not related,

but it appears the purpose of the statements is simply to establish that Mr. Jutras does not

have any evidence that would support a finding that Mr. Lopez or Mr. Cota – or any other

---

[7] Plaintiff objects to many statements on the basis that they are supported by Mr. Lopez's "new" summary judgment affidavit.  There is nothing improper in supporting a statement of fact by affidavit.

[8] The purported recording of Mr. Jutras's conversation with Mr. Lopez is a corrupted file.  It is the only corrupted audio file on the thumb drive Mr. Jutras filed.

Town employee – was involved in the decision to send the letters in question.[9]  *Id.* ¶¶ 121, 123, 124.

### Evidence filed by Plaintiff

Mr. Jutras has provided the Court with an affidavit signed by former Chief Deputy Walker.  In addition, he has asked the Court to listen to a collection of audio recordings available on a thumb drive.  As indicated above, I have listened to the recordings.  The content of the Walker affidavit I will now describe.

Based on an affidavit signed April 9, 2019 (ECF No. 194-1), it appears that if he were called to testify, Mr. Walker would state that he "randomly" overheard Mr. Lopez make derogatory remarks about Mr. Jutras, did not ever hear Lopez instruct officers to target Jutras, but did hear Lopez state on one occasion he would give a fifth of whiskey to the first officer to catch Jutras for OUI, but then quickly took it back saying he was just kidding.  Walker recalls hearing Lopez vocalize frustration when there was an issue with Jutras, to include a statement that he hated Jutras.  Walker recalls that he, himself, stated he did not understand why Lopez did not leave Jutras alone, though he indicated he considered it "false" to state that Jutras was "overzealously targeted by Police for adverse treatment."  *Id.*

---

[9] A review of one cited document (Jutras Dep. Ex. 23) reflects that the letters advised Mr. Jutras that he was not welcome at Sugarloaf and other properties after he sold his condominium unit.  See also Attachments to Pl.'s Compl. (ECF No. 1-1).

16

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 247-48 (1986).  A material fact is one that has the potential to determine the outcome of the litigation.  *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com*, *Inc.*, 854 F.3d 97, 101 (1st Cir. 2017).  To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor.  *See Triangle Trading Co. v. Robroy Indus*., *Inc*., 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact.").

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011).  In this action, Plaintiff contends the Town Defendants deprived him of his rights under the Fourth, Fifth, and Fourteenth Amendments.  Technically speaking, Plaintiff's § 1983 action involves, exclusively, a Fourteenth Amendment claim, because the Fourth and Fifth Amendments apply only to the federal government, not the states.  The Town Defendants, as municipal

authorities, are imbued with state power and, therefore, their actions are circumscribed by the Fourteenth Amendment, which reads, in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV § 1.  In his memorandum of law, Plaintiff has advanced his claim based, exclusively, on due process principles.  Moreover, I do not interpret his pleadings as advancing a claim based on any Fourteenth Amendment clause other than the Due Process Clause.

The Fifth Amendment, which Plaintiff also cites, contains its own Due Process Clause.  *See* U.S. Const. amend. V.  Because the Fourteenth Amendment already contains the Clause, there is no need for Plaintiff to pursue a claim that cites the Fifth Amendment and, accordingly, I will not discuss the Fifth Amendment further.   Plaintiff's Fifth Amendment Claim is dismissed as a redundancy.

The Fourth Amendment governs searches and seizures.  It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Although the search and seizure language is not found in the Fourteenth Amendment, the Supreme Court has held that the prohibitions stated in the Fourth Amendment protect both liberty and privacy and, therefore, the prohibitions apply

with equal force to the States by operation of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  Thus:

> The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society.  It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clause.

*Wolf v. People of the State of Colo.*, 338 U.S. 25, 27–28 (1949), overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961).

Given these constitutional principles, I understand Plaintiff to be alleging in this action that the Town Defendants deprived him of liberty, property, and/or privacy interests through the application of arbitrary police power.  I will assess these claims under the Fourteenth Amendment substantive due process standard. [10]

Where state actors transgress due process standards, they are amenable to suit under 42 U.S.C. § 1983.  For Plaintiff to demonstrate that he has a trialworthy § 1983 substantive due process claim based on the arbitrary exercise of police power, he must do more than raise a genuine issue concerning an incident that he believed was an unwarranted interruption of his enjoyment of liberty, property or privacy.  He must clear an additional and much-higher bar, because "only the most egregious official conduct is arbitrary in the constitutional sense." *Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010) (quoting *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998)).  Thus, Plaintiff must show that one or more of the Defendants engaged in action that *"*shocks the conscience." *Id.*  "[C]onduct

---

[10]  Unauthorized, intentional actions taken by state actors will not support a claim for denial of procedural due process.  *Farris v. Poore*, 841 F. Supp. 2d 436, 440 (D. Me. 2012).  For this reason, Plaintiff's due process claim is assessed as a "substantive" due process claim.

intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. If conscience-shocking conduct is demonstrated, then the Court must also consider whether the specific conduct in question violated a right protected by the "substantive" Due Process Clause. *Martinez*, 608 F.3d at 64.

I address the claim against Mr. Cota first. Simply stated, there is absolutely nothing in the summary judgment record that would support Plaintiff's claim against Mr. Cota. No reasonable juror could reasonably regard as "conscience-shocking" anything that Mr. Jutras has laid at Mr. Cota's door. Nor could a reasonable juror find that Mr. Cota condoned or encouraged any police misconduct against Mr. Jutras or acted in a manner reflecting deliberate indifference toward something that could be regarded as conscience-shocking. *See*, *generally*, *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (describing standards applied to § 1983 claims of supervisory liability). Mr. Cota, therefore, is entitled to summary judgment because he is not amenable to suit merely based on his supervisory authority as the town manager.

As for Mr. Lopez, there is only one component of the summary judgment record that could support a finding of state action unjustified by any government interest and shocking to a reasonable person's conscience. I have in mind, specifically, the circumstances surrounding the vandalization of Plaintiff's car and Plaintiff's bald allegation that Mr. Lopez could have framed him by loading ammunition into one of his

firearms after the guns were taken into police custody. [11]  "[M]anufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). [12]

The question is whether the finder of fact, on the record before the Court, could draw the inferential finding that Mr. Lopez was responsible for vandalism and planted evidence.  I do not see evidence that would permit the finder of fact to make such a finding without engaging in speculation.  To begin, Mr. Jutras has not provided a statement of material fact supported by citation to material of evidentiary quality to support his contention.  This, ordinarily, would end the inquiry.  *See, e.g.*, *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 424 (1st Cir. 2014).  However, given his pro se status and given the Town Defendants' citation to page 154 of Mr. Jutras's deposition when relating the facts about the vandalism, I reviewed the ensuing pages of the deposition transcript to determine what, if any, basis Mr. Jutras might provide to support a claim that Mr. Lopez was in league with vandals or planted evidence to support a criminal charge, assuming that is, in fact, his contention.

At his deposition, Mr. Jutras testified that he did not leave his guns loaded in the car.  Jutras Dep. at 155.  For purposes of summary judgment, that assertion will be taken as a given.  He also testified that he was not sure who collected and inventoried the guns,

---

[11] The rest of the evidence concerning Mr. Lopez's known actions falls well short of the substantive due process standard.

[12] One might argue that the analysis should focus on the reasonableness of conduct related to search and seizure, rather than substantive due process.  Either way, the factual question remains the same: whether the fact finder could infer that Lopez orchestrated the vandalism or otherwise used it as a means to plant evidence.

but that he would have no reason to disagree if Officer Reed's report stated that Officer Reed had done so. *Id.* at 156. Asked whether he had "any reason to disagree that that's what [Reed] found when he checked the gun," Mr. Jutras testified, "I wasn't present, so I can't say." *Id.* at 157. Mr. Jutras otherwise stated that he was under the "impression" from a phone call with the officer who first reported the vandalism to him that Mr. Lopez "was going to be the first one at the site," and that when he later "went and spoke with [Lopez] in the recording, it was my understanding that he was the first one at the site and it was at 6:00 o'clock the next morning." *Id.* at 158. Oddly, of the twelve MPEG-4 audio files supplied by Mr. Jutras on his thumb drive, the file titled "10-10-14 Chief Guns" is the only file that is corrupted.

Given the evidence before me in the summary judgment record, I conclude that a reasonable jury could not fairly find that Mr. Lopez was connected to the vandalism. Additionally, even if the jury accepted that the gun was not loaded when Mr. Jutras placed it in the car, it would not logically follow that Mr. Lopez loaded ammunition into the rifle or instructed any of his officers to do so. Consequently, I conclude that Mr. Jutras has not provided evidence capable of supporting a non-speculative finding that Mr. Lopez subjected him to the deprivation of a constitutional right. Given this conclusion, Mr. Lopez and the Town of Carrabassett Valley are entitled to summary judgment on Plaintiff's substantive due process claim.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 186) is GRANTED. Plaintiff's Motion for Sua Sponte Summary Judgment (ECF No. 200) is DENIED.

Plaintiff's Motion to Admit Attorney Scott Shaw to Practice Pro Hac Vice (ECF No. 203)

is DISMISSED as MOOT.

       **SO ORDERED.**

Dated this 8th day of August, 2019

                                      /s/ Lance E. Walker
                                      U.S. DISTRICT JUDGE